IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY WORTHY, | ) | Case No. 1:20-cv-00446 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | THOMAS M. PARKER |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## I.      Introduction

Plaintiff, Kimberly Worthy, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).   Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Worthy's DIB application be affirmed.

## II.     Procedural History

Worthy applied for DIB on March 28, 2017.  (Tr. 175, ECF Doc. 14 at 1).[1]  She alleged that she became disabled on November 17, 2016 (Tr. 174) due to depression, anxiety and "post-traumatic."  (Tr. 233).  The Social Security Administration denied her application initially (Tr.

---

[1] The administrative transcript is in ECF Doc. 12.

103-109) and on reconsideration.  (Tr. 111-117).  Worthy requested an administrative hearing.

(Tr. 119).  ALJ Pamela Loesel heard Worthy's case and denied the claim in a February 5, 2019

decision.  (Tr. 15-29).  On December 27, 2019, the Appeals Council denied further review,

rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3).  On February 27,

2020, Worthy filed a complaint challenging the Commissioner's decision.  ECF Doc. 1.

## III.    Evidence

### A.    Relevant Medical Evidence

On September 26, 2016, Worthy reported that she was using opiates on a daily basis and

had a history of drinking 24 cans of beer and a bottle of whiskey per day.  (Tr. 354).  She also

reported that she had previously thought about killing herself by driving into traffic when drunk.

Examination showed that her clothing was clean and she had good hygiene.  She had organized

and coherent speech, good eye contact, and she denied any current suicidal or homicidal

ideation.  She did report some hopelessness.  (Tr. 362).  Worthy's treatment plan was to reduce

anxiety and panic so that she could complete activities of daily living.  (Tr. 340).

On October 6, 2016, Worthy reported that she had been placed on a leave of absence

from work for anxiety.  (Tr. 291).  On October 8, 2016, Worthy reported that pills helped her

with social inhibitions, but she felt that they had stopped working.  (Tr. 337).  Suboxone was

then prescribed and, on October 17, 2016, Worthy reported that it was working; she felt like

herself again and had more energy.  (Tr. 341).  On October 21, 2016, Worthy continued to report

feeling herself again.  She also reported that her husband and children had noticed an

improvement.  (Tr. 336).

On November 18, 2016, Worthy reported that she'd had a panic attack at work.  She was

given an additional prescription for Paxil.  (Tr. 297).  On December 31, 2016, she reported that

she was scared to drive.  She had tremulous speech, but was negative for psychosis and suicidal

2

or homicidal ideation. (Tr. 298, 334). On December 21, 2016, Worthy was found eligible for short-term disability benefits through Cigna. (Tr. 285-286).

On February 13, 2017, Worthy stated that she had gotten a dog to help with her anxiety. She reported that she stayed at home because that was the only place she felt safe. She also reported that Paxil had been ineffective. Worthy agreed to attend an AA meeting. (Tr. 302, 344). On February 20, 2017, Worthy reported feeling sick all week; she believed she would be let go from work. However, she had been resting and sleeping and was feeling better. (Tr. 349). On February 24, 2017, Worthy reported that she was doing better managing her emotions and medication had shortened and slowed down her panic attacks. (Tr. 303).

On March 7, 2017, Worthy reported that she was tired of being home alone, but was hoping that medication would make it all better. Worthy was advised that medication could only do so much and that intensive outpatient treatment and AA meetings would help. (Tr. 310).

On March 14, 2017, Dr. James Rodio examined Worthy. He noted good alertness and orientation; slow psychomotor speed; persistent speech; euthymic mood; flat affect; a logical thought process; "blocked" thought content; and fair judgment and insight. He opined that she suffered from "quick onset" anxiety and was doing everything she could to return to functionality. (Tr. 307-309).

On March 28, 2017, examination showed that Worthy was clean but had a depressed mood and flat affect. She reported being more isolated. (Tr. 315). On March 29, 2017, Worthy reported being down again. (Tr. 316). On April 11, 2017, Worthy stated that she had not been leaving the house but had been staying busy. She was advised that if she wanted to get better she needed to face some fears and move on. Her counselor, Douglas Boose, discussed intensive outpatient therapy and AA as safe places to learn about herself and be around others. (Tr. 304).

Treatment notes from April 21, 2017 described Worthy as social with Paxil.  Worthy reported that medication helped with panic attacks.  She had good hygiene but tremulous speech. (Tr. 326).  On May 22, 2017, Worthy reported quitting a job due to being overwhelmed, but that she was interviewing at other places.  (Tr. 328).  On June 28, 2017, Worthy reported that she had been fired from work after five days.  Mr. Boose referred her to a partial hospitalization program. (Tr. 327).

Worthy missed an appointment on August 8, 2017.  (Tr. 422).  On August 21, 2017, Worthy reported not leaving her house for weeks.  Worthy was advised to call another facility regarding getting a bed and looking for part-time work.  (Tr. 421).

On September 13, 2017, Worthy reported that she had been diagnosed with diabetes.  She also reported holding a broken glass to her wrist and having rage issues when irritated.  (Tr. 420). On September 29, 2017, Worthy reported that she was having trouble relaxing following an eviction.  Examination showed that Worthy appeared anxious.  (Tr. 417).

On January 11, 2018, Worthy had a first meeting to establish care with Alex Uzdavines, M.A., at MetroHealth for withdrawal symptoms from Suboxone.[2]  Uzdavines observed that Worthy had an unremarkable appearance; she was cooperative but anxious; she was oriented in all spheres; her speech was spontaneous and normal; her thought process was logical and organized; she had a tight association; no noted psychotic thoughts; her judgment and insight were fair; her recent and remote memory were within normal limits; her attention span and concentration were sustained; her language was appropriate; she had an okay fund of knowledge; her mood was anxious and her affect was full.  (Tr. 467).  Uzdavines diagnosed bipolar disorder,

---

[2] The record noted Worthy was "dropped as a patient" at the Center for Effective Living due to owing money on a bill.  ECF Doc. 12 at 463.  Alex Uzdavines was an MA trainee under the supervision of Sheerli Ratner, Ph.D., who countersigned the visit notes.

alcohol and opioid use disorders in remission and panic disorder with agoraphobia. (Tr. 455-457).

On July 3, 2018, Worthy went to the emergency room for bronchitis, hemoptysis and mild intermittent reactive airway disease with acute exacerbation. (Tr. 431). She returned to the emergency room on July 12, 2018 complaining of shortness of breath, orthopnea and fatigue. (Tr. 491). She stated that she had been using Albuterol six times a day. (Tr. 491). Worthy was oriented in all spheres. Her primary diagnosis was anxiety and depression, and she stated that she wanted to return for psychological care, once reestablishing health coverage. (Tr. 494).

On August 14, 2018, Worthy underwent a mental health assessment at MetroHealth. (Tr. 502-506). Worthy stated that she was interested in medication management and counseling. She reported seeing things in her peripheral vision, hearing obscene noises, and the voices of her deceased parents. (Tr. 502). Worthy reported doing a lot of house cleaning and a lot of shopping. She also reported enjoying watching television and purchasing things for her children. The examiner noted that Worthy was well groomed; was oriented in all spheres; had sustained concentration; and was cooperative. Worthy had an anxious mood with congruent effect but clear speech; a logical and organized thought process; cognitive findings with normal limits; and fair insight and judgment. (Tr. 505). Worthy's diagnoses were listed (by history) as: bipolar disorder, panic disorder, alcohol abuse, opioid abuse, depression, and anxiety. (Tr. 506).

On September 11, 2018, Worthy reported worsening anxiety and depression. She reported having five panic attacks a week and was on a leave of absence from work. (Tr. 510). Examination showed that Worthy was oriented in all spheres. (Tr. 512). The plan was to titrate to Lamictal, but Worthy missed her follow-up appointment. Her medication was changed to Seroquel, but on September 19, 2018, Worthy reported no significant improvement. (Tr. 513, 517).

5

**B.       Relevant Opinion Evidence**

**1.       Treating Source – Counselor Douglas Boose**

On May 2, 2017, Douglas Boose of the Center for Effective Living completed a mental status questionnaire for Worthy.  (Tr. 320-323).  Dr. Rodio also signed the questionnaire.  (Tr. 324).  Mr. Boose noted that Worthy had a disheveled appearance, an anxious and labile mood, irrational thoughts, paranoia, low concentration, short term memory loss, poor insight, limited judgment, and fear of people, places and things.  (Tr. 320).  She was diagnosed with opioid use disorder, PTSD, and panic disorder with agoraphobia.  Mr. Boose opined that Worthy would have difficulty remembering, understanding and following directions; could start but not retain attention due to panic; would have difficulty completing a "scenario;" and had some deficiencies in her ability to interact socially with low adaptation skills.  Mr. Boose also opined that, if Worthy could get to work, the stress would cause her to lose control of her ability to function. (Tr. 321).

**2.       Treating Source - Dr. James Rodio**

On September 29, 2017, Dr. Rodio completed a Mental Impairment Questionnaire on behalf of Worthy.  (Tr. 424-429).  Dr. Rodio assigned a global assessment functioning ("GAF") score of 50.  He noted that Worthy had medication side effects of dizziness, drowsiness and upset stomach.  She appeared disheveled, labile, anxious and had panic attacks.  (Tr. 424).  Dr. Rodio checked boxes indicating that Worthy had the following signs and symptoms:  anhedonia, appetite disturbance, decreased energy, thoughts of suicide, feelings of guilt or worthlessness, impairment in impulse control, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, pathological dependence, passivity or aggressivity, persistent disturbances of mood or affect, apprehensive expectation, recurrent obsessions or compulsions, which were a source of marked

6

distress, substance dependence in remission, emotional withdrawal or isolation, intense and unstable interpersonal relationships and impulsive and damaging behavior, emotional lability, deeply ingrained maladaptive patterns of behavior, illogical thinking, easy distractibility, memory impairment, sleep disturbance, oddities of thought, perception, speech or behavior, and recurrent severe panic attacks.  (Tr. 425).

Dr. Rodio opined that Worthy would not be able to complete a normal workday and work week.  He checked boxes indicating that she would be unable to remember work-like procedures; maintain regular attendance and be punctual; work in coordination with or in proximity with others; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers; respond appropriately to changes in a routine work setting; deal with normal work stress; deal with stress of semi-skilled and skilled work; interact appropriately with the general public; and travel in unfamiliar places.

Dr. Rodio opined that Worthy had extreme limitations in activities of daily living; marked limitations in maintaining social functioning and maintaining concentration, persistence or pace; and that she would have four or more episodes of decompensation within a 12 month period.  (Tr. 428).  Finally, Dr. Rodio opined that Worthy would miss more than four days of work per month.  He noted that her substance abuse was in remission, but that it had caused damage.  He stated that she was still functioning at a low level.  (Tr. 429).

### 3.      Treating Source – Dr. Kevin Christopher

Dr. Christopher also completed a Mental Health Questionnaire, but it appears that only the first page of the questionnaire is in the record.  It is not dated or signed.  (Tr. 500).  Dr. Christopher noted that Worthy had been diagnosed with Bipolar I.  His clinical findings were listed as depressed mood, panic attacks, fatigue, insomnia and suicidal ideation.  He stated that

he was "uncertain" of her prognosis.  He checked boxes indicating that Worthy would be unable to meet competitive standards in the following work categories:  carrying out detailed instructions; maintaining attention and concentration for extended periods; managing regular attendance and being punctual within customary tolerances; working in coordination with or in proximity to others without being distracted by them; and completing a normal workday and workweek without interruptions from psychologically based symptoms.  (Tr. 500).

### 4.    Other Source – Christopher Barker

On September 21, 2018, Worthy's brother, Christopher Barker, completed a function report on behalf of Worthy.  (Tr. 271-282).  He reported that Worthy could not work because she would cry and shake uncontrollably; she could not breathe and would pass out.  (Tr. 271).  He stated that all she could do was sit on her couch.  (Tr. 273).  He reported that she had notes all around her house but still needed to be reminded to care for herself.  (Tr. 275).  He stated that her anxiety/depression prevented her from going out, and she could not shop.  (Tr. 277).  He wrote that his sister was a shell of her former self and was very dependent on others.  In his opinion, she could no longer care for herself or work.  (Tr. 282).

### 5.    State Agency Consultants

On June 6, 2017, state agency reviewing consultant, Stanley Kravitz, Ph.D., reviewed Worthy's mental health records and opined that she was moderately limited in her ability to understand and remember detailed instructions; in her ability to carry out detailed instructions; in her ability to maintain attention and concentration for extended periods; in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; in her ability to perform at a consistent pace without an unreasonable number and length of rest periods; in her ability to interact appropriately with the general public; in her ability to accept instructions and respond appropriately to criticism from supervisors; in her

ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and in her ability to respond appropriately to changes in the work setting. (Tr. 83-85). On September 11, 2017, Aracelis Rivera, Psy.D., reviewed Worthy's mental health records and affirmed the opinions of Dr. Kravitz. (Tr. 96-99).

C.     **Relevant Testimonial Evidence**

Worthy testified at the ALJ hearing. (Tr. 44-68). She stated that she lived with her husband and eight-year old twins. She was able to care for her personal hygiene and clean the home. (Tr. 45-46). She was able but did not like to drive. (Tr. 46). Her husband did the cooking and laundry. He also did the grocery shopping. (Tr. 47). She did not have any friends or social clubs, but her brother visited her twice a month. (Tr. 46-47).

A typical day for Worthy involved getting up to make sure her kids went to school, watching TV or YouTube, vacuuming and playing with her dog. She stayed up late because she did not sleep well. She did not leave her house. (Tr. 48).

Earlier in the year, Worthy had been hired as an assistant manager at Walmart. Her job duties included overseeing certain departments of the store. Six managers worked under her, and she had the authority to hire and fire employees. (Tr. 50). Worthy was currently on leave from her Walmart job. She testified that she had been on a leave of absence much of the time she worked there and had "physically" worked there for only about two months. (Tr. 49).

Worthy was on leave due to her bipolar condition. During her manic periods she was very productive, but when depression set in, she could not work or interact with people. (Tr. 52). Her paid leave of absence was almost exhausted at Walmart, and she thought she would probably be fired if she did not return to work. She had previously worked at Kmart as a co-manager and had lost her job in a similar manner. (Tr. 53). She had also previously held management

positions at Rite Aid, Dollar General and Save-A-Lot.  (Tr. 54-56).  At most of her jobs, she had

been required to lift heavy objects such as freight and merchandise.  (Tr. 60).

Worthy had previously abused alcohol and opioids to help her function at work.  She felt

that her bipolar and anxiety symptoms were worse now that she had been sober for two years.

(Tr. 62-63).  She had previously been prescribed Suboxone, but she could not afford it and did

not have health insurance.  (Tr. 63).

Worthy described feeling paranoid that others were watching her.  She thought she was

seeing her dead mother.  She also testified that she picked at her skin.  (Tr. 64-65).  She stated

that she had panic attacks three to four times a week.  She described a bad panic attack as her

mouth going numb; her vision starting to blur; getting dizzy; and needing to sit down to breathe

and relax.  Sometimes her panic attacks lasted for a couple of hours.  She would often get a

migraine headache after the panic attack.  (Tr. 66).

Vocational Expert ("VE") Michael Klein also testified.  (Tr. 68-74).  The VE considered

Worthy's past work to include employment as a retail manger, within retail and grocery settings;

a department manager; a stock manager; and a printing machine operator.  (Tr. 69-70).  The VE

testified that an individual of the same age, education and past work experience as Worthy, who

could perform a full range of exertional work and who could perform simple, routine tasks

consistent with unskilled work; could work with a small group of three to four individuals with

occasional superficial contact with others, meaning of short duration for a specific purpose; and

could perform work with infrequent change where changes were explained in advance with no

fast pace or high production quotas, would not be able to perform any of Worthy's past work.

(Tr. 70-71).  However, she would be able to perform the jobs of laborer - stores, cleaner, and

production helper.  (Tr. 71).  If the same individual also required low stress work, meaning no

arbitration, negotiation, responsibility for the safety of others and/or supervisory responsibility,

she would still be able to perform these jobs.  (Tr. 72).  If this individual were off task 20% or

more of the time, she would not be able to work.  And, if the individual missed four or more days

of work per month, she would not be able to work.  (Tr. 72).  Work would also be unavailable for

someone who required two additional 15-minute breaks during the workday.  (Tr. 74).

## IV.    The ALJ Decision

The ALJ made the following paraphrased findings relevant to this appeal:

3.  Worthy had the severe impairments of bipolar-I disorder and panic disorder
    without agoraphobia.  (Tr. 18).

4.  Worthy did not have an impairment or combination of impairments that met or
    medically equaled the severity of one of the listed impairments.  (Tr. 19).

5.  Worthy had the residual functional capacity to perform a full range of work at
    all exertional levels, but she could perform only simple, routine tasks
    consistent with unskilled work; could work with a small group of three to four
    individuals, could have occasional, superficial contact with others (meaning of
    a short duration and for a specific purpose); could undergo infrequent change
    in which changes are explained in advance; could perform work with no fast-
    pace or high-production quotas; and could perform low stress work (meaning
    no arbitration, negotiation, responsibility for the safety of others, or
    supervisory responsibility.)  (Tr. 20).

9.  Considering her age, education, work experience, and residual functional
    capacity, there were jobs existing in significant numbers in the national
    economy that Worthy could perform.  (Tr. 28).

Based on all of her findings, the ALJ determined that Worthy was not under a disability from

November 17, 2016 through the date of her decision.  (Tr. 29).

## V.    Law & Analysis

### A.    Standard of Review

The court reviews the Commissioner's final decision to determine whether it was

supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C.

§§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person

would accept as adequate to support a conclusion.  *Rogers*, 486 F.3d at 241; *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion.  42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek*, 880 F.3d at 783 ("It is not our role to try the case *de novo*." (quotation omitted)).  This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'"  *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review

decisions of administrative agencies for harmless error.").  Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).  Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits.  20 C.F.R. § 404.1512(a).

###### B.      Non-Severe Physical Impairments

Worthy argues that the ALJ erred when she failed to find that Worthy had any severe physical impairments.  Worthy asserts that she had the physical impairments of obesity, opioid withdrawal, alcohol abuse, obstructive sleep apnea, bronchitis and mild intermittent asthma.  She argues that the ALJ should have mentioned Social Security Ruling 02-1p, which sets forth the criteria for evaluating obesity.  ECF Doc. 14 at 11-13.

At the second step of the sequential analysis, the ALJ considers whether the claimant has a "severe impairment."  20 C.F.R. § 404.1520(a)(4)(ii), (c).  A "severe impairment" is a medically determinable impairment that: (1) has more than a minimal effect on an individual's ability to perform physical or mental work; and (2) is "expected to result in death [or] to last for a continuous period of at least 12 months."  20 C.F.R. §§ 404.1509, 404.1522; *see Salmi v. Sec'y of Health & Human Servs.*, 744 F.2d 685, 691 (6th Cir. 1985) ("'An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.'" (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984))).  If the claimant does not have a severe impairment, or combination of impairments, the regulations direct the ALJ to find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

Step Two is a threshold inquiry "intended to 'screen out totally groundless claims.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).  The ALJ considered Worthy's physical impairments at Step Two, but found that they did not cause more than a minimal limitation in her ability to perform work.  The ALJ stated:

> The medical record demonstrates that the claimant has obesity, opioid withdrawal, alcohol abuse, obstructive sleep apnea, bronchitis, and mild intermittent asthma. The record does not include adequate evidence that these impairments have

resulted in symptoms of a frequent or severity expected to cause more than a minimal work-related limitation.  As such, the undersigned finds these impairments non-severe.

Notes from July 6, 2018, indicate that the claimant was five feet and seven and one half inches tall and weighed 227 pounds and eight ounces.  According to the National Institutes of Health, the claimant has a body mass index ("BMI") of 35.11.  A BMI greater than or in excess of 30 is generally considered obese.  A BMI in the range of 35 to 39.9 is considered level II obesity.  However, inadequate objective medical findings existed in the record to support more than minimal limitations on the claimant's ability to perform work activities arising from obesity.

(Tr. 18).

As stated above, Worthy has argued that the ALJ should have mentioned Social Security Ruling 02-1p in her decision, but Worthy has not further developed this argument.  Social Security Ruling 02-1p acknowledges that obesity can be a severe impairment when it significantly limits an individual's physical or mental ability to do basic work activities.  It also recognizes that obesity can affect other systems of the body and that its effects are not always obvious.

However, Worthy has not explained how Social Security Ruling 02-1p relates to her own medical conditions, functional abilities or the administrative record.  No record indicates a medical care provider treated or counseled Worthy concerning her obesity, and there is no evidence that she was unable to do her work because of her obesity or other physical impairments.  Nor did she testify to any physical impairments during the administrative hearing.  Thus, Worthy has not pointed to any substantial evidence that undermines the ALJ's basis for finding that Worthy's physical impairments were not severe.

## C.    Listings 12.04 and 12.06

Worthy also briefly argues that the ALJ failed to properly evaluate her psychological impairments by finding that she had only moderate limitations in the "B" criteria.  ECF Doc. 14

at 13.  But Worthy has also not fully developed this argument.  She never discussed any specific listings in her brief or otherwise explained how the ALJ's findings on the "B" criteria affected the ALJ's non-disability finding.  However, during the administrative hearing, Worthy argued that she met the criteria for Listings ¶¶ 12.04 and 12.06, and because the Commissioner's brief has addressed this argument as if it were fully developed by Worthy (ECF Doc. 15 at 10-13), I have also provided the following analysis.

At Step Three, a claimant has the burden to show that she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. §§ 404.1520(a)(4)(iii).  If the claimant meets all of the criteria of a listed impairment, she is disabled; otherwise, the evaluation proceeds to Step Four.  20 C.F.R. § 404.1520(d)-(e), 416.920(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers v. Comm'r of SSA*, 582 F.3d 647, 653 (6th Cir. 2009) ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (noting that, without such analysis, it is impossible for a reviewing court to determine whether substantial evidence supported the decision).  The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ."  *See Sheeks v. Comm'r of SSA*, 544 F. App'x 639, 641 (6th Cir. 2013).  "If, however, the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing."  *Id.* at 641; *see also Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ

16

erred by not conducting any Step Three evaluation of the claimant's physical impairments, when the ALJ found that the claimant had the severe impairment of back pain).

Listing 12.04 establishes the criteria for affective disorders, and Listing 12.06 establishes the criteria for anxiety-related disorders.  20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.04(B), 12.06(B).  To meet the Listings' severity level for these categories of disorders, the claimant must show that she meets: (1) the impairment-specific medical criteria in paragraph A; and (2) the functional limitations criteria in paragraphs B or C. [3]  20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.00(A).

Paragraph B of the two Listings is identical.  Paragraph B requires that the claimant's disorder must result in an "extreme limitation of one or marked limitation of two, of the following areas of mental functioning:

> (1) understand, remember or apply information;
>
> (2) interact with others;
>
> (3) concentrate, persist or maintain pace;
>
> (4) adapt or manage oneself."

20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.04(B), 12.06(B).

The ALJ expressly evaluated Listings 12.04 and 12.06.  She found that Worthy was only moderately limited in all four of the Paragraph B areas of mental functioning, stating:

> In understanding, remembering or applying information, the claimant has moderate limitations.  The claimant did not allege any particular issues in this area.  However, the claimant also stated that she could perform simple maintenance, shop online, drive and read.
>
> In interacting with others, the claimant has moderate limitations.  Here, the claimant alleged that she has difficulty engaging in social activities.  However,

---

[3]  Because Worthy has not argued that the ALJ erred in her assessment of Paragraph C, the ALJ's analysis of the Paragraph C criteria is not evaluated here.

according to her statements, the claimant is also able to spend time with family and lives with others.  Finally the medical evidence shows that the claimant was described as pleasant and cooperative.

The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace.  For this criterion, the claimant has moderate limitations.  The claimant contended that she has limitations in maintaining a regular work schedule.  On the other hand, the claimant said that she is also able to drive, watch TV, and use the internet.

Finally, the claimant has moderate limitations in her ability to adapt or manage herself.  The claimant asserted that she has difficulties managing her mood.  That said, the claimant also stated that she is able to care for children.  Meanwhile, the objective record showed the claimant to have appropriate grooming and hygiene. (Tr. 19).

Worthy has argued that the evidence cited by the ALJ failed to reflect the actual evidence in the record.  In support, she has cited reports from the Center for Effective Living, which stated that she was scared to drive, that she was disheveled in appearance, had an anxious and labile mood, irrational thoughts, paranoia, low concentration, short term memory loss, poor insight, limited judgment, and had a fear of people, places and things.  (Tr. 320).  She has also cited opinion evidence stating that she would have difficulty completing a "scenario" and had severe deficiencies in social interaction and adaptation.  ECF Doc. 14 at 13-14.  While this evidence *is* in the record, the record also contains the conflicting evidence cited by the ALJ.  In addition to the evidence cited in Step Three of her decision, the ALJ's summary of Worthy's medical records at Step Four includes many positive findings from Worthy's treating providers.  In other words, the ALJ did not misstate evidence from the record; she only interpreted it differently than Worthy would have liked.  And Worthy has not adequately explained the relationship between the evidence she has cited and the four categories of mental functioning.  She also has not identified the categories in which she believes (based on the cited evidence) the ALJ should have found marked or extreme limitations.

The Sixth Circuit has held that, "[a] claimant must do more than point to evidence on which the ALJ could have based her finding to raise a 'substantial question' as to whether she satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks*, 544 F. App'x at 641-42).  "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error when a claimant could not show that he could reasonably meet or equal a listing's criteria).

Here, the ALJ evaluated Listings 12.04 and 12.06.  She cited specific record evidence in support of her findings that Worthy did not meet the Paragraph B criteria.[4]  Worthy has cited different evidence from the record, but she has not explained how it demonstrated that she met all of the criteria for Listings 12.04 or 12.06.  Worthy has not demonstrated that she met all of the criteria for either one of the listings.  Nor has she identified any error in the ALJ's evaluation at Step Three.  At most, Worthy has shown how the ALJ could have reached the opposite conclusion on her Listings argument; but that is not enough to sustain her burden of proof.  Even if Worthy could show that a preponderance of the evidence supports her position, the court still lacks the authority to overturn the Commissioner's decision "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien* 819 F. App'x at 416.  Here, Worthy's claim that evidence supported her Listings argument is not enough to obtain a remand, because the ALJ plainly cited evidence that supported her Listings conclusions.

---

[4] Worthy also argues that the ALJ should not have considered the fact that she lived with her husband and twins as evidence that she had only moderate limitation in interacting with others.  ECF Doc. 14 at 16. However, Worthy has not cited any authority in support of this argument.  The ALJ was permitted to consider this fact in assessing whether Worthy met the Paragraph B criteria.

### D.    Medical Opinion Evidence

Worthy next argues that the ALJ erred in her RFC finding by not assigning greater weight to the opinions of her treating psychologists.  ECF Doc. 14 at 16-20.  At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.  20 C.F.R. §§ 404.1520(e).  On January 18, 2017, the Social Security Administration amended the rules for evaluating opinion evidence for claims filed on or after March 27, 2017.[5]  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. § 404.1520c(a).  Nevertheless, an ALJ must "articulate how [s]he considered the medical opinions and prior administrative medical findings" in adjudicating a claim.  20 C.F.R. § 404.1520c(a).  In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors.  20 C.F.R. § 404.1520c(b)(2).  Consistency concerns the degree to which the opinion reflects the same limitations described in evidence from other sources, whereas supportability concerns the relevancy of objective medical evidence and degree of explanation given by the medical source to support the limitations assessed in the opinion.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

---

[5] It appears that Worthy filed her disability claim on March 28, 2017.  (Tr. 175; ECF Doc. 14 at 1).  The ALJ stated in her decision that Worthy's claim was filed on March 27, 2017.  (Tr. 15).  Either way, the new regulation, 20 C.F.R. § 404.1520c, applies to Worthy's claim.

### 1.  Dr. Rodio

Worthy argues that the ALJ improperly evaluated the opinion evidence from Dr. Rodio.

However, the ALJ applied the correct regulatory requirements but found that Dr. Rodio's

opinion was less persuasive than other opinions in the record, stating:

> Next, James Rodio, M.D., completed a form on the claimant's behalf on March
> 14, 2017 (Exhibit 1F).  Dr. Rodio cited mental examination notes from February
> 27, 2017.  These indicated that the claimant had good alertness and orientation;
> slow psychomotor speed; persistent speech, euthymic mood; flat affect; a logical
> thought process; block thought content; and fair judgment and insight.  Notes
> indicate that the claimant had been staying alone in her room but visiting her
> brother.  The claimant reported increased anxiety while driving, being in a large
> group, or performing several activities at once.  Dr. Rodio indicated that the
> claimant could not perform a variety of duties, often from one task to another,
> without loss of efficiency or composure; perform under stress when confronted
> with emergencies or unusual situations; or perform with demands of precise
> attainment of set tolerances, limits, or standards.  Dr. Rodio indicated the claimant
> could accept responsibility for control, direction, or planning or activities;
> perform repetitive work; influence people; express personal feelings; work alone
> or in isolation; and follow specific instructions.  Dr. Rodio explained that the
> claimant possessed "above average intelligence but the anxiety she suffers from
> was quick onset, and she is doing everything she can to return to functionality at
> present."  The undersigned finds these opinions persuasive to the extent they
> support the above residual functional capacity.  These opinions support the
> claimant can perform low-stress, unskilled work with no fast pace production
> quotas and superficial contact with others.  This is supported by Dr. Rodio's
> stated notes showing the claimant had good alertness and orientation but slow
> psychomotor speed and fair judgment.  These opinions are supported by the
> record as a whole because they are consistent with other mental status
> examinations explored in detail above.  The opinions are not consistent with the
> other opinions of record.  They show the claimant as [*sic*] limited than Dr.
> Christopher but slightly more limited that the State Agency examiners.  The
> undersigned finds the opinions of the State Agency examiners more persuasive
> because they possess program knowledge.  (Tr. 24).

### 2.  Dr. Christopher

Worthy also argues that the ALJ erred in his evaluation of Dr. Kevin Christopher's

opinion.  After summarizing some of Dr. Christopher's opinions, the ALJ stated:

> The undersigned does not find these opinions persuasive.  However, the
> undersigned notes that the claimant's ability to perform very short and simple
> instructions supports the claimant can perform unskilled work.  It is not clear what

evidence Dr. Christopher relied on to support his opinions.  This level of limitation is not supported by the record.  Mental status notes explored in detail above described the claimant as cooperative and having recent and remote memory intact.  The claimant has retained the ability to clean her house and has the concentration to watch television.  This opinion is not consistent with the other opinions in that it finds the claimant more limited.  Finally the claimant testified that she was recently hired into an assistant manager position at Walmart with a commensurate salary of $50,000 a year. This position far exceeds work at an unskilled level.  As explored below, the undersigned finds the opinions of the State Agency consultants the most persuasive because they are supported by the record and program knowledge.  (Tr. 24).

### 3.  Mr. Boose

Finally, Worthy complains that the ALJ found Mr. Boose's opinion, which was co-signed by Dr. Rodio, to be less persuasive.  ECF Doc. 14 at 16.  After summarizing the opinion evidence from Mr. Boose and noting that Dr. Rodio had signed Dr. Boose's statement, the ALJ stated:

> The undersigned does not find these opinions persuasive.  The opinions are partially supported by Mr. Boose's description of the claimant.  However, they are not supported by the other objective evidence in file.  For instance, Mr. Boose indicated the claimant could not drive, but the claimant continued to drive.  Next, these opinions are not supported by the rest of the record.  Dr. Rodio's mental status notes relied on in the opinion were not as severe.  Similarly, the opinions are consistent with Dr. Rodio's opinions noted above in that they found the claimant much less limited about two months later.  Finally, the claimant testified that she was recently hired into an assistant manager position at Walmart with a commensurate salary of $50,000 a year.  This position far exceeds work at an unskilled level.  (Tr. 25).

Worthy argues that the ALJ did not properly evaluate her treating sources' opinions, but her brief cites case law applying the old regulation.[6]  Worthy's claim was filed after the Social Security Administration revised the rule regarding the evaluation of medical evidence and on or

---

[6] Worthy argues that the ALJ was required to assign more weight to her treating physician, Dr. Rodio, and that she was required to provide "good reasons" for her failure to assign controlling weight.  These requirements relate to 20 C.F.R. § 404.1527, which does not apply to claims filed on or after March 27, 2017.

after March 27, 2017, the day that 20 C.F.R. § 404.1520c went into effect.  The ALJ correctly noted that she was not required to defer to or give any specific evidentiary weight to the treating source opinions.  Rather, she was required to articulate how she considered each opinion and to explain how she considered the supportability and consistency of those opinions.  The ALJ adequately complied with these regulations.  She considered Dr. Rodio's, Dr. Christopher's and Mr. Boose's opinions, accepted some of them, and explained why she found that some of their opinions were not as well supported or persuasive as other medical opinions in the record.  Worthy has not identified any error in the ALJ's evaluation of the treating source opinions.

Worthy contends that the ALJ should not have relied on the fact that Worthy had recently been hired at Walmart to show that she was capable of performing some jobs in the national economy.  Worthy argues that the evidence of her Walmart job was submitted only to show that she *wanted* to work, not that she *could* work.  ECF Doc. 14 at 17-18.  Worthy implicitly argues that the ALJ should not have considered this evidence for any other purpose than the one she intended.  However, Worthy has not cited any authority supporting such an argument.  Nor is the court aware of any regulation or other authority which prohibitins the ALJ from considering this fact in support of her finding that Worthy was not disabled.  I find no error in how the ALJ used the evidence of Worthy's recent employment.

Worthy also argues that the ALJ erred by finding that the state agency reviewing physicians' opinions were more persuasive than those of her treating sources.  However, the ALJ was not required to defer to the treating source opinions and was permitted to find that the state-agency reviewing physicians' opinions were more persuasive.  The ALJ explained that she found them more persuasive because they possessed program knowledge (Tr. 24) and because they were more consistent with the record.  (Tr. 26).  Moreover, even before 20 C.F.R. §404.1520c went into effect, the ALJ was permitted to rely on the state agency reviewing physicians'

opinions.[7]  *See Hahn v. Comm'r of Soc. Sec.,* 2018 U.S. Dist. LEXIS 161050, *20 (6th Cir. Sept. 20, 2018).

Worthy complains that the ALJ erred in her assessment of the various opinions in the record, but she has not met the burden of showing that the ALJ's RFC determination was not supported by substantial evidence in the record.  Under current regulations, the ALJ was permitted to find the state agency reviewing physicians' opinions to be more persuasive and to rely on them as substantial evidence supporting her RFC determination.  Worthy has not identified any legal error in the ALJ's evaluation of the medical source opinions pursuant to 20 C.F.R. § 404.1520c.

### E.    Subjective Symptom Complaints

Worthy also argues that the ALJ's determination regarding her credibility was erroneous because it was not supported by substantial evidence and violated Social Security Ruling 16-3p. ECF Doc. 14 at 21.  The ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, 1996 SSR LEXIS 4, was clarified in SSR 16-3p, 2016 SSR LEXIS 4 to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."  SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).  The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an

---

[7] "[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight."  *Douglas v. Comm'r of Soc. Sec.,* 832 F. Supp. 2d 813, 823-24 (S.D. Ohio 2011).  This is because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  *Id.*; § 416.927(c), (d); SSR 96-6p, 1996 SSR LEXIS 3 at *4. "Consequently, opinions of . . . record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization."  *Douglas,* 832 F. Supp. 2d at 823-24.

adversarial court litigation." *See* 2016 SSR LEXIS 4,[WL] at *11.  Under SSR 16-3p, 2016 SSR LEXIS 4, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

1.  Daily activities;

2.  The location, duration, frequency, and intensity of pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.  Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.,* 2016 SSR LEXIS 4, 2017 WL 5180304, at *7-8; see also 20 C.F.R. § 404.1529(c) and former SSR 96-7p, 1996 SSR LEXIS 4.

Even after SSR 16-3 clarified the rules concerning subjective symptom evaluation and removed the term "credibility" from the regulations, the procedures for reviewing an ALJ's assessment under SSR 16-3p, 2016 SSR LEXIS 4 are substantially the same as the procedures under SSR 96-7p, 1996 SSR LEXIS 4.  *Delong v. Comm'r of Soc. Sec.,* No. 2:18-cv-368, 2019 U.S. Dist. LEXIS 16167 (S. D. Ohio, Feb. 1, 2019).  Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, 2016 SSR LEXIS 4, with few exceptions.  *Whicker-Smith v. Comm'r of Soc. Sec.,* No. 1:18-cv-52. 2019 U.S. Dist. LEXIS 29085 at *16; *See Duty v. Comm'r of Soc. Sec.,* 2018 U.S. Dist. LEXIS 159013, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

A claimant's subjective symptom complaints may support a disability finding only when objective medical evidence confirms the alleged severity of the symptoms. *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989).  An ALJ is not required to accept a claimant's subjective symptom complaints, however, and may properly discount the claimant's testimony about her symptoms when it is inconsistent with objective medical and other evidence.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003); SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017) ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.").

Here, the ALJ applied proper legal standards and reached a conclusion supported by substantial evidence in evaluating Worthy's subjective symptom complaints.  42 U.S.C. §§ 405(g), 1383(c)(3); *Elam*, 348 F.3d at 125.  The ALJ's decision demonstrates that she considered Worthy's subjective complaints but found that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and did not support the alleged level of limitation.  (Tr. 21).  The ALJ's decision includes a lengthy summary of both Worthy's subjective statements and the objective evidence. Regarding the factors related to her subjective symptom complaints, the ALJ noted that Worthy reported no difficulty with personal care, cleaning, driving and helping her children with homework.  (Tr. 20-21).  The ALJ also cited medical records showing that Worthy had reported that Suboxone was "a miracle" and that she was feeling back to herself again while taking it. (Tr. 22).  The ALJ summarized numerous other positive findings from Worthy's treating sources that were inconsistent with Worthy's statements regarding the severity of her symptoms.  (Tr. 22-23).  And, the ALJ's assessment of subjective symptom complaints (formerly credibility) is entitled to deference because she was in a position to observe Worthy's demeanor.  *Carroll v.*

*Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 78420 at *16 (S.D. Ohio May 9, 2018); quoting

*Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008).  Substantial evidence supported the

ALJ's assessment of Worthy's subjective symptom complaints, and Worthy has not identified

any error in the ALJ's application of legal standards to her statements.

### F.    Step Five Burden

Finally, Worthy argues that the ALJ failed to meet her burden at Step Five of the

sequential evaluation.  However, this argument is not so much related to Step Five as it is to the

ALJ's RFC determination, because Worthy argues that the ALJ's question to the vocational

expert did not accurately reflect her physical and mental impairments.  She restates her argument

here that had the ALJ had found Worthy's treating psychiatrists' opinions more persuasive, she

would have formed a different RFC and asked the VE different hypothetical questions.

At the final step of the sequential analysis, the burden shifts to the Commissioner to

produce evidence as to whether the claimant can perform a significant number of jobs in the

national economy.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002); 20 C.F.R.

§§ 404.1520(a)(4)(v).  An ALJ may determine that a claimant has the ability to adjust to other

work in the national economy by relying on a vocational expert's testimony that the claimant has

the ability to perform specific jobs.  *Howard*, 276 F.3d at 238.  A vocational expert's testimony

in response to a hypothetical question is substantial evidence when the question accurately

portrays the claimant's RFC and other vocational characteristics.  *See id.* (stating that

"substantial evidence may be produced through reliance on the testimony of a vocational expert

(VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [the

claimant's] individual physical and mental impairments" (internal quotation marks omitted)); *see

also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) (unpublished) (stating

that the ALJ's hypothetical question must "accurately portray[] a claimant's vocational abilities

and limitations").  "An ALJ is only required to incorporate into a hypothetical question those limitations she finds credible."  *Lee*, 529 F. App'x at 715; s*ee also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints.").

As already explained, Worthy has not identified any error in the ALJ's evaluation of the treating source opinions or her own subjective symptom complaints.  The ALJ was not required to base her questions to the VE on the opinions of Worthy's treating psychiatrists or Worthy's own statements.  Rather, she was required to incorporate the limitations that *she* found credible, and she did.  Consequently, Worthy has not identified any error in the ALJ's decision at Step Five.

## VI.    Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Court affirm the Commissioner's final decision denying Worthy's application for DIB.

Dated: January 27, 2021

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).